Good morning, your honors. John Ballas on behalf of Mr. Castaneda. I'm intending to leave about five minutes for rebuttal. Okay. I'll call you when it's five minutes. Thank you. The first issue I want to address is the voir dire issue. And in this case, the judge conducted all the voir dire. And at the last pretrial conference, they informed the judge that the parties had stipulated that the defendant's prior conviction for possession of cocaine base for sale in 1996 would be admitted for the limited purpose of showing the defendant's knowledge or absence of any other purpose. The defense attorney asked that the court voir dire the jurors about whether or not they would be able to follow that type of instruction. And I think the judge's denial of that request was error here, and it requires reversal for a new trial. Well, you rely on a state court of appeal case. That was a post, I think, Prop 115 case, which the state courts run somewhat differently than the federal courts in terms of what voir dire is allowed. I guess it's not binding on us. Is that correct? That's right. It's ways too short. And I think in the excerpts of record, we have about three and a half pages of the voir dire. But there was more voir dire than that, correct? Yes. It was a pretty perfunctory voir dire. It was just the general asking the name, education background, family, et cetera. There was actually no questions in terms of the defendant's prior conviction. Do you have a juror's ability to follow the law in that nature of questioning? Yes. Excuse me. Go ahead. Do you have any case out there that would stand for the proposition because the question on voir dire wasn't asked, that it was reversed other than, you know, that would be binding on us? Well, Baldwin is the Ninth Circuit case that addresses it. The question has to be with asking questions about law enforcement witnesses and the failure to ask the questions about how they feel about the credibility of law enforcement witnesses. The general test in this court in Jones is its abusive discretion where the questioning is not reasonably sufficient to test for bias or partiality. And I think in this case, that's what we have here. There's two purposes of voir dire. One is to be able to challenge jurors for cause, but the other is to allow the attorneys enough information to glean bias so that they can exercise peremptory challenges effectively and appropriately. Was Judge Garcia concerned about that, you know, depending on how the dynamics of the trial developed, that possibly there could be mention of a felony conviction and then it never turned out that that would materialize in front of the court? He didn't mention that at all as a reason. I don't think that that was the reason he was concerned. In fact, the parties had already said they stipulated that the conviction would be admissible, and they actually agreed that it would be admitted as an exhibit, go back into the jury room, and that's what has actually happened in the case. The judge said that he denied the request because it wasn't, he didn't think it was appropriate to give a question about a specific type of evidence. But it's not really that much difference than a lot of the other standard questions that people ask about mental health, how jurors feel about mental health evidence or firearms or a particular type of defense. And while the California Court of Appeals case is really persuasive authority, not controlling, I'd point out that it's exactly on all fours, and it relies on the constitutional principle of having a fair and impartial trial, not a difference between California. Was there a standard of review on this question of whether the judge abused his or her discretion? Yes. Now, what was, what constitutes the abuse of discretion here? Abuse of discretion is the judge's not complying with his obligation to have, to get information from the jurors to determine whether they are biased or prejudiced when they learned of the defendant's prior conviction, like everyone agreed that they would. Whether that would make them so All right. He instructed, though, on this. He instructed as to the limited purpose. Yes. All right. So when he asked, you know, will you follow the instructions? So if we were to, say, accept your, that this is reversible error, then how do we, you know, then is every time that the judge doesn't question on a piece of evidence as to it's going to be limited, that then that would stand for the proposition that, you know, we can't presume that people will follow the law? No. No. Not when it's a general, for instance, it's How do we cabin this? You know, this is I think cabin it in the fact that the Jones case talks about where there's particular types of things that the practice and experience has known that jurors are likely to be biased. And those type of things, the judge is obligated to ask enough questions to be able to develop that bias. In this case in particular, that's one area that the first thing a defense attorney tries to do is keep out a defendant's prior convictions, because there's a general sense that once a jury hears that, that evidence could be so powerful that they're going to forget, they're not going to listen to all the rest of it. They're going to be so biased against him that they're not going to really follow the judge's instructions and look at all the evidence carefully. That's set forth in Rule 404B is the general rule against Is there a risk, though, that once you go there, you could make it worse for the defendant? That once you, by bringing it out? Or brings it out and then No. Not at all, because, I mean, the evidence is going to come out. The parties have stipulated to it. It's clearly going to be there. So it's best to be able to confront it rather than ignore it and determine whether there's bias, and if a juror says something to the effect that, yes, I think if he did it once, he probably did it again, then the defense attorney can strike those jurors and be able to concentrate on getting the other fair and impartial jurors. And I think the I guess I don't disagree with you that I probably would have given that question, but does that make it, just because someone doesn't do something like I would, does that make it abusive discretion? It doesn't. It has to be more than that. In this type of, in the general rule, no. Not every question, if the defense asks about a particular type of evidence. But when the evidence is so important, when it's the defendant's prior convictions, this is what the California Court of Appeals said, exactly on point, that that kind of evidence is so significant that the judge is required to glean whether possible bias. This Court's decision has not addressed exactly that point, but they have talked about the general principle. When there's particular types of evidence like how you, are you always going to believe law enforcement officers, that that's the type of thing that the judges are required to ask if the defense attorney asks for that type of a question. And if they don't, then it's abusive discretion. And that's exactly what you have here. Let me move on to the other issues. I think unless the Court has, directs me to a specific issue, I just want to touch briefly on the reasonable doubt, the improper closing argument, and then go to the crack versus powder cocaine disparity issue. The government has conceded that in closing argument, the prosecutor misstated the burden of proof. But the judge ended up giving the correct instruction. That's correct. Why doesn't that just eliminate that argument? Well, because I think the argument was the last instruction that the jury heard, and it was an argument interpreting the judge's instruction. The judge would instruct on what reasonable doubt means. But they heard the prosecutor's explanation of that that went unrebutted. And what the prosecutor says, it's beyond a reasonable doubt, which is something less than that. It's something that leaves you reasonably convinced, and that's it. It's that simple. Don't get paralyzed by the fact that there is an instruction of beyond a reasonable doubt. This was in the prosecutor's rebuttal closing argument, where his defense did not have another opportunity to respond to it. But isn't there an instruction that the judge gives that I will tell you what the law is? Yes. The others are just whatever the counsel says about the law, that's just part of their argument. Aren't the jurors then presumed to follow the judge's instruction? That's the general presumption that the jurors are presumed to follow the judge's instructions. That does not mean that a prosecutor's comments cannot be so egregious that there's a risk of error or risk that they would not follow the instruction requiring reversal. Was there an objection? No. And my argument is primarily because it was the last thing that argued to the jury because it was on the crucial fundamental principle of beyond a reasonable doubt, and because the case was close and it wasn't an overwhelming case, that that requires reversal. Despite the fact there was no objection by counsel? Yes, Your Honor. If it was so egregious, wouldn't it have appeared to counsel to stand up and say, I object? If they were on the ball, I would think they would, but they didn't. But does then the judge – I mean, when we review what the judge did, the judge did everything correctly. Well, the judge instructed correctly at the end. That's correct. The judge – I think the judge should have, sua sponte, on a question of reasonable doubt, stopped the prosecutor and told him that is an improper explanation. I understand, Your Honor. Thank you. The last issue I want to address before I save my time for rebuttal is a sentencing issue on the – whether the court can and should consider the 100 to 1 differential between crack and powder cocaine and the Sentencing Commission's reports and findings in determining what the appropriate sentence is under 3553A. There's now a split in the circuits. The Pickett case, which I cited in the 28J Supplemental Authorities Letter, recently came out very strongly that it was – the district court erred when it said it would not consider the Sentencing Commission's findings and reports in determining what is the appropriate sentence. And, in effect, the Sentencing Commission, in a series of reports over time, has said that it's – that the guideline range is for crack cocaine and powder cocaine do not really promote the purposes of sentencing. They are unfair and has recommended to Congress that they be reduced or eliminated. And, in fact, the Pickett case says that the court should – the district court should consider the Sentencing Commission's findings that the guideline ranges for crack cocaine do not promote the purposes of sentencing. They exaggerate the seriousness of the offense. They have no – it doesn't promote respect for the law, and it doesn't promote just punishment. It gives essentially three reasons why this is so. One is that the disparity between the guidelines between crack cocaine and powder cocaine tends to hit the small, little retail crack cocaine dealers in the street much more severely than the wholesale, more culpable suppliers of powder cocaine that actually is used to – for those street dealers. The second reason the Sentencing Commission said that the disparity is inappropriate is it fails to distinguish even between the different crack cocaine offenders because it makes the quantity so overwhelming that you can't consider the rest of the factors. And the third thing that the Sentencing Commission said and the Pickett court adopted is that it threatens respect for the law in the Federal courts because there's such a disproportionate impact on African-Americans who are being charged in about 81 percent of crack cocaine cases that it threatens the public confidence in the courts and the amount of the sentencing. Why isn't this a question for Congress, as the district court suggested? I think it's a question for both. I think Congress should consider that, but I have no control over that. But I think because of Booker that now that the sentencing guidelines are advisory and the district courts are required to consider factors such as the seriousness of the offense, whether the individual sentence will promote respect for the law and just punishment, the court can and should consider the disparity between the crack cocaine and powder cocaine sentences. I'm going to leave the rest of my time for rebuttal. All right. Thank you. Good morning, Your Honors. My name is Jason Hitt. I represent the United States, and I should mention I was actually co-trial counsel on the lower court case with Mr. Beck. You rewrote the reasonable doubt instruction? Was that you? I was not the rebuttal closing argument prosecutor. I was the closing argument. But I have been asked to step in because of Mr. Bender's illness and other people's unavailability. I want to just sort of briefly respond to the arguments made by Mr. Ballas, sort of starting in order with the voir dire question. Well, why wouldn't that have been? I mean, prior convictions are red flags. I mean, the logical thing is if you've done it, not everyone has a prior drug conviction. So if you've done it before, why wouldn't that be a proper question? Your Honor, I think the issue here is a little more nuanced than the defendant would have it. The standard is abuse of discretion, and there was a stipulation that the prior conviction would be admissible at trial. But if the judge is sort of in this untenable position of simply letting the cat out of the bag to the entire voir dire panel or veneer, then the government elects not to introduce that evidence. The court essentially is pre-prejudicing, if you will, because of Your Honor's concerns, the panel that will eventually be sworn in to be the jury for this case. And I think the other thing is if you think about it in terms of what if the defendant, and often will happen, will say he may testify at trial. Well, but that's a little different because you could hold the prosecutor to. I mean, the prosecutor, the motivation for the prosecutor not to put in a prior certainly wouldn't be as great as the defendant can wait until the people rest their case to decide whether they want to testify. Well, I think the issue, though, is whether the voir dire panel would be instructed in the manner that the defendant suggests in the scenario where the defense makes it known to the district court. I would like the same instruction because in the event my defendant testifies, I need to know if when he's impeached with his prior conviction these people are going to be so prejudiced that they can't be fair. And oftentimes defendants like not to testify, and I think you would see the argument that, aha, the district court pre-prejudiced, it would be the flip side by highlighting this prior that never came in because my client never testified. The government would consistently be in the position, and district courts would be in a very untenable position of having to accept this instruction without knowing whether the evidence would be admitted ultimately. And I think Your Honor's pointed out in this particular case, the court did provide general instructions that covered the same ground, and in the abuse of discretion. Well, no, it didn't cover the same ground. What instructions would cover the ground of the effect of a prior conviction? It said, you know, will you follow the law, basically, is what the instructions said. Well, I think, Your Honor, what I mean by that is that in instructing the panel, it was. . . The jury instructions said how to view a prior. The opening jury instructions, the limiting instruction given to the sworn jurors, and then the closing instructions all indicate that there was evidence, there would be evidence, and then there was evidence admitted for a very limited purpose. I think that distinguishes Chapman, which Mr. Ballas relied on. It doesn't specify what kind of evidence. Is that correct? In the opening part, it was not, because the courts, as the Court explained in its ruling, it was very concerned about highlighting what is essentially highly prejudicial and admissible evidence. I might be concerned about prejudicing the jurors. I've got a felon on my hand. But if the defense attorney feels it's important, knowing it's going to be admissible and wants to test the reaction of jurors, why shouldn't that attorney be given that chance? I think the answer is the Federal rules invest wide discretion in district courts to make this precise call based on the facts of each case presented. And in this case, a very experienced trial judge decided to exercise his discretion, and he made very pointed findings or at least articulated on the record why it is that Judge Garcia felt in this case it would not be appropriate and it would have the impact of highlighting the evidence unnecessarily. If you were not an experienced Federal district judge but a brand-new appointee from academia on the bench in making that decision, would you say then it might be an abuse of discretion? The abuse of discretion standard that this Court has built into these type of reviews would permit you on that type of case to say on these facts with this type of evidence you needed to allow a defense counsel to ask this question or you should have exercised your discretion in this manner. But as the panel pointed out in some of its questions to defense, there is no limiting principle. There is sort of a slippery slope. If we permit every question that could conceivably be asked by defense counsel to be submitted to the Court and a flurry of questions, all of which could create reversible error, I think it's a very untenable position for district courts to have to continue to sort through without being able to give the wide discretion that they're given under the Federal rules. There is a problem, as Judge Callahan said, of happening this. But this isn't just any old question. This is a very specific question concerning this very specific case. And discretion means that you could abuse it or not abuse it. And the question is where do we draw the line. Your Honor, I think in this one, in this case, because the abuse of discretion is the standard, the Court should find that the Court did not abuse its discretion and that the evidence, as admitted and carefully limited through instructions throughout the trial, was appropriate and not an abuse of discretion. I would note, too, that the Gillis case, which is relied on in the reply brief, can be easily distinguished in that you have the sort of the two-jury, what I would call a two-jury panel problem. In Gillis, there was the same veneer panel sat and listened to evidence in the voir dire process of a case that was against the same defendant, Gillis. A month later, similar veneer panel for a second methamphetamine conspiracy case sat through more instruction about the same defendant. And in that case, I think you just have a very different factual setting for the finding that there was error there. These were the same panel members hearing about the same defendant in a prejudicial manner. And the problem there is clear. I think, in addition, the Chapman case, if you read it carefully, as the Court pointed out, is not binding. It is a state court decision. But what's important about that, too, is that the case did not involve any limiting instructions when the prior conviction came in, and it involved the actual element of the crime. And in Federal court, when you have a 922 felon in possession case, there is a limiting instruction. And perhaps in those cases where it's an element of the crime, the voir dire question would be more appropriate. In this case, I think the judge appropriately exercises discretion in declining the requested instruction. In terms of the third and fourth questions, I'll move on to the reasonable doubt argument. As the Court pointed out, the District Court in this case correctly instructed on reasonable doubt. A one-word slip is not, I would submit, an egregious misstatement. It's clear that there was error, but it was not so great to substantially affect the rights of the defendant. Mr. Ballas indicated that this was a close case, and I would submit it was not. There was overwhelming evidence of Mr. Castaneda's guilt, which goes to the substantially affects his rights analysis, and that included his fingerprint on a crack pot. He fled when officers arrived. He was seen by the first entry person on SWAT. The testimony of Marcos Garcia, the conspirator in the conspiracy, defendant's fingerprint on a powder cocaine stained cup in the kitchen where there appeared to be an active crack distribution manufacturing going on inside the house. And additionally, the government presented a phone during the life of the conspiracy, corroborating that Garcia would call when the sort of wire was primed to get the dope. He would call Castaneda's phone on repeated occasions. And finally, the physical surveillance corroborated that Mr. Castaneda was always involved in these drug deals. So in terms of the close case, I don't think it was, and I think that any mistake, as Your Honor pointed out, was not objected to, and therefore it's plain error, and the error here did not affect substantial rights because of the overwhelming evidence of Mr. Castaneda's guilt. And I'll tell you something. Now, what about on the ñ is it your position that the district court lacked any discretion to deviate from the guidelines concerning sentences for crack cocaine, or that the district court lacked discretion to deviate absent some showing of unfairness in the application of the guidelines to the particular defendant? I think the way to answer that, Your Honor, is to survey the cases and what we do know. And what we do know is in FOE, the First Circuit case, and the line of cases cited in the government's brief, those cases say that if you substitute your own ratio, and in the cases that I've seen, most of them have done district courts have substituted the 101 with a 20 to 1. In those cases, there's clear legal error, and the district court is improper in doing so by substituting its own policy decisions and essentially agreeing with the commission's unadopted recommendations in various reports. So that creates legal error. The newest case, Pickett, is actually an interesting one in that it simply says, the district court can consider the ratio in imposing the overall sentence. It is not signing off on the FOE problem of substituting the ratio. And I think even Pickett itself, the D.C. Circuit Court, distinguishes FOE and the entire line of cases, and I thought about how that could be. And the only thing I can conclude is that a district court, even this district court in Pickett on remand, could impose a sentence less than what the guidelines call for, using the idea that I find that the ratio 100 to 1 creates a high sentence, and therefore I'm going to give a lower one. The D.C. Circuit has permitted that in their circuit, but what it has not said is that substituting is permissible, and I think all the courts are in agreement across the board. And in this case, Judge Garcia, that's what his statement meant. When he said, I don't think I have discretion to substitute my judgment or something to that effect that's in the record, he's pointing to that First Circuit. Of course, the D.C. Circuit hadn't decided Pickett yet. And I think what's important is that issue isn't really before the court at all. It's not as if we have a district court who himself substituted the ratio and now you're reviewing whether that was appropriate or reasonable. Instead, you have a district court that was presented the argument, presented in foe, and said, I'm not going to go there. I think that's Congress's job. And I think that's consistent with all the circuits that have addressed this substitution issue. And I think in this case the record demonstrates that the defendant would have been sentenced to the same sentence no matter what. Judge Garcia made clear this defendant's criminal history, his gang affiliation, his leadership role, the conduct in this case, his prior conviction, the fact that he was on federal supervised release for a 922 violation at the time of this crime, all supported the sentence under 3553. And in the excerpts of record at 104, I think the court makes clear that deviating or giving any sort of break to this defendant was not in the cards according to this district court. I would like to finally note before I ask the court for any of its questions that one item that was not included in the government's brief that I discovered last night is simply on the Franks issue. In reviewing the courts or in the excerpts of record, I noticed that one thing that kind of needed to be framed is that down in the district court, in excerpts of record at page 38, the defense counsel actually had framed much of the Franks analysis and Franks argument to the district court about a different address. And, in fact, in reading carefully what Mr. Denver, who was Castaneda's trial counsel, said, he says at page 38, the more reliable information would be that the East Avenue, which was the only issue on this appeal raised by defense counsel, was his residence, and he's referring to Castaneda's residence, since that is where he was registered as a drug offender, where he was required by law to make an accurate statement. And then a little further down on excerpts of record 38, lines 23 and 24, Mr. Denver actually says to Judge Garcia, so the probable cause would indicate that the residence was not Hazleton but was, in fact, East Avenue. And East Avenue is the entire focus of the defense Franks issue on appeal. So I think even down in the district court it was recognized that there was ample PC for East Avenue and that the Hazleton stuff that's being retread on appeal had already basically been decided. And for those reasons, I think the Franks issue is largely a red herring. I will reserve the rest of the time for any questions. Yes, ma'am. I have a question. I'll go back just for me. One of the most troublesome issues in the case is the voir dire and the question of failing to ask that question. Can you cite to me any case where failure to do, to ask a particular question, is deemed to be harmless error? The government didn't present any authority to that effect, and I'm not aware of any. I know what was cited in the brief was the sort of problem that we see with affirming the defendant's tactics in this case, and that's Scottie Lawrence. And that's the case in which the prior conviction was discussed at voir dire, not admitted into evidence, and then error was found because of the sort of letting the cat out of the bag problem that is created with giving this voir dire instruction about prior convictions. And the ‑‑ if I may, I can grab the slide for you. It's on Scott? Scottie Lawrence, and it's a ‑‑ It's a 1983 case, right? 1994, Ninth Circuit. But it's a 1983 case, isn't it? That's the type of, the context of the case, isn't it? Oh, yes. Yes, Your Honor, it is a ‑‑ Not year 1983. Right, right, right. It is a ‑‑ Section 1984. Section 1984 case in which civil voir dire was held to be an abuse of discretion because, and this was the idea was defense counsel told the court that it would introduce the plaintiff's prior convictions for impeachment. The court then went on to give extensive voir dire or at least very specific voir dire about the two prior convictions. The prior convictions did not come in for various reasons set forth in the decision, and I think it was that they were not disclosed timely or some fault of the party, and then on appeal it was held to be error for putting that out there. And so what I would suggest is that the abuse of discretion standard in this case and the actions taken by Judge Garcia were very well thought out, and I think in the context of this case it was not an abuse of discretion because he was afraid to highlight it, and it also would tie the government's hands in terms of the evidence that would be produced in the trial by putting it out there. If ultimately for whatever reason the government considered, well, this 404B evidence, we just don't need it, or we're not going to do it, or for whatever reason there came up, decided not to do it, and now the jury has been told, I think it creates a major problem on the other side. So as I hear your answer, it's based on abuse of discretion, not abuse of discretion, but it was harmless anyway based on the overall evidence. Is there no case out there that you know of? Not that I'm aware of, Your Honor. All right. Thank you. Thank you. If there are no further questions, I will let my colleague go. Thank you, Mr. Head. Thank you. I just want to respond to a few points he made on the voir dire issue. First of all, just to emphasize, there was no question in this case that the prior conviction was admissible and would come in evidence. The parties had stipulated that the judge should question before the voir dire. Second, I think it's a very important point. Well, okay. It would be, I think that the argument would be, let's say because there was a stipulation, both sides had stipulated, and then let's say he had asked the question and then there was something came up that it didn't come in. The argument would be here that it was invited error because you stipulated that it would come in. So, but what I'm, Scott v. Lawrence stands for the proposition when the court did it and then the evidence turned out differently, then that was error. So why doesn't it stand for the flip side that when you're worried about that and you try to avoid that problem, that that would be a proper exercise of your discretion to avoid that problem? I think it's a huge difference when it's the defense that asks for the instruction because in that case, the judge did it sua sponte before there was any question about whether or not it would be admissible. There was no ruling on the admissibility and the judge asked it sua sponte. When the defense comes and asks for the voir dire, like the Court just mentioned, it's invited error. You run the risk if it didn't get brought in. Well, we don't have to address that here, but the truth of the matter is if the defense is going to ask for that type of voir dire, you're going to be pretty sure that that's going to come in because it actually, the situation was that they had litigated 404B questions on whether or not it would be admitted, more than just the fact of that one conviction. And then essentially the parties had stipulated and narrowed it down to that one conviction. So I think when the defense asks for the instruction, it's invited error. They know their sheriff's going to come in. And, in fact, it did come in, and it's an abuse of discretion. Might it not be a defense strategy to inoculate the jury early in the, by getting it out there in the voir dire and then giving them a little vaccination so that when it comes out later in the trial. Yes. That's one of the purposes. But the other main. I'm not one of the most experienced federal defenders in the country making this effort here to get the Ninth Circuit to adopt a kind of a California innovation on voir dire, that then someday it will be reversible error if they don't let the counsel inoculate the jury on this kind of a deal. Inoculate the jury, but also to be able to glean bias or prejudice from the jurors. Because you have jurors when you ask them about it's a drug case or if you've heard that someone's been arrested before, how do you feel? Some people say, well, if he's been arrested, he must be guilty. The police must have some evidence. That's what the defense wanted to get out here. Quinn was my boss at the federal defender's office for eight years, and a very experienced attorney. And I think that's the main purpose, was to be able to glean bias, be able to use your peremptories, and also to challenge jurors for cause. I think the other arguments the government makes don't hold water. They said that ultimately the judge did instruct the jurors that they should only consider the prior conviction for a limited purpose. But at that point, it's too late. The issue here is not whether the instruction was appropriate, but whether the defense attorneys and the court was able to determine whether any of the jurors were biased during the voir dire. And that's both with Chapman, the California case, and Gillis, the Tenth Circuit case. They say it's too late. The instruction later on does not alleviate the problem during voir dire. And then finally, the last point I want to make is the government never asserted harmless error in any of its briefs. And I think this is an issue that, especially in this type of a case, it does not really, harmless error analysis cannot really apply. Because we don't know what the jurors' responses would be if the proper question was asked. The unappealing part about that, though, is that the trial's over before it ever starts. You know, I mean, when you make something a structural or reversible error, that understanding for the proposition, because you didn't ask one question on voir dire, that whole everything that happened after that. The question they didn't ask, yes. It's not just asking any old question. It's the one question about the defendant has a prior conviction for selling crack cocaine, possession for sale. He's on trial for the exact same thing here. Can you put that out of the mind in terms of propensity and follow the judge's instruction? I mean, that's just a crucial thing. And if the court does not ask that question or some other question designed to get that and I finally just want to conclude by saying that if you don't find an abuse of discretion here, you're never going to, there's never going to be a case where the judge has failed to ask a question with an abuse of discretion. It's appropriate here and you should reverse for a new trial. Thank you both for your argument. This matter will now stand submitted. Thank you.
judges: Goodwin, D.W. Nelson, Callahan